# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| SUNLESS, INC., | : | Civil Action No. 5:21-cv-00248 |
| | : | |
| Plaintiff, | : | (Lead Case) |
| v. | : | |
| | : | Judge Solomon Oliver, Jr. |
| PALM BEACH TAN, INC., et al., | | |
| | | |
| Defendants. | | |

# REPLY MEMORANDUM IN SUPPORT OF
# MOTION TO EXCLUDE TESTIMONY OF CHRISTINE S. MEYER, PH.D

**INTRODUCTION**

In the same way Dr. Meyer ignored the factual record in this case, Defendants' Opposition[1] ignores the myriad issues of unreliability with the facts and methods underlying Dr. Meyer's expert opinions, which render those opinions inadmissible under Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 26(a). Defendants ignore their burden under the 2023 amendments to Rule 702 to show that Dr. Meyer's opinions meet that rule's standards of reliability and elect to use much of the Opposition only to regurgitate Dr. Meyer's flawed conclusions. And yet, the fatal flaws in Dr. Meyer's opinions identified by Sunless in its Motion remain unanswered: (1) Defendants provide no additional analysis or facts to support Dr. Meyer's conclusion that a ▮▮▮▮▮▮ Mystic Tan® Booth price was unaffordable to Defendants and still do not account for the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ (2) Defendants still cannot point to any evidence in the record that Sunless' alleged anticompetitive actions concerning Mystic Tan® Booth Parts were in retaliation for Defendants' refusal to purchase Mystic Tan® Solution from Sunless; (3) Defendants' still have no substantive response concerning their complete lack of evidence showing that Sunless' actions regarding Mystic Tan® Booth Parts or VersaPro® solution caused any harm to Defendants, Defendants' customers, or competition generally; and (4) Defendants simply double down on the fact that many of their experts' opinions rely on unproduced information from interviews with PBT's CFO, and Defendants cite no applicable legal support for why those opinions must not be excluded for blatant violation of Rule 26(a).

It is for these reasons, and those below, that Dr. Meyer's opinions must be excluded.

---

[1] "Opposition" shall refer to Palm Beach Tan, Inc. ("PBT"), Palm Beach Tan Franchising, Inc. and the five franchisees (collectively, the "Defendants") Opposition to Plaintiff Sunless Inc.'s ("Sunless") Motion to Exclude Testimony of Christine S. Meyer, Ph.D. (the "Motion").

**ARGUMENT**

I. **DR. MEYER'S OPINONS ARE UNRELIABLE AND MUST BE EXCLUDED**

Conspicuously absent from Defendants' discussion of the requirements of Rule 702 is any mention of its recent amendment that clarifies that Defendants "bear[] the burden of showing the expert testimony more likely than not complies with the rule" and "that an expert opinion must 'reflect[] a reliable application' of the expert's methodology." *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*, 93 F.4th 339, 345 n.4 (6th Cir. 2024). Instead, Defendants try to minimize their burden by relying on language from cases that predate the amendment. *See* Opp. at 7-8, 10. Indeed, the amendments "were drafted to correct some court decisions incorrectly holding 'that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility.'" *Id.* at 348 n.7 (quoting Fed. R. Evid. 702 Advisory Committee's notes to 2023 amendments). Defendants fail to meet their burden pursuant to the recent Rule 702 amendments. Further, and contrary to what Defendants argue in their Opposition (Opp. at 10), Defendants cannot avoid the glaring issues of reliability with Dr. Meyer's opinions by casting them as issues of "weight" for the jury to consider. *Id*.

    A. **Dr. Meyer's Opinions Are Unreliable Not Because the Facts Are Disputed by Sunless, But Because Her Opinions Lack Evidentiary Support.**

Defendants attempt to reduce Sunless' criticisms of the facts on which Dr. Meyer bases her opinions as Sunless simply "disput[ing] the facts." But Sunless thoroughly outlines in its Motion not just factual disputes, but Dr. Meyer's failure to (1) verify any of the conclusory assertions provided by Mr. Hall; (2) collect information vital to her conclusions; and (3) consider directly contradictory evidence to her unsupported factual conclusions. The root of these failures

2

is Dr. Meyer's insistence on ignoring facts in the record and instead relying on allegations in Defendants' pleadings or information provided in Mr. Hall's interviews.

First, Dr. Meyer set the standard of whether the ▮▮▮ dollar price for Mystic Tan® Booths was "affordable" as the metric for whether it was anticompetitive tying. Mot. at 4. She then explained in her deposition that "the way I think of that [affordability] as an economist is whether or not it is economically rational for the company – the customer…to buy the unbundled product with the higher price." *See* Opp. at 11 n.43. While this may be the way Dr. Meyer thinks about determining tying, it does not comport with the law in the Sixth Circuit. *See Shamrock Mktg., Inc. v. Bridgestone Bandag, LLC*, 775 F. Supp. 2d 972, 980–81 (W.D. Ky. 2011) (noting that the Sixth Circuit's "all rational buyers" standard sets "a very high bar for any plaintiff" and that courts "should only in the rarest of circumstances and under the most coercive of conditions infer a tying arrangement."); *Valassis Communs., Inc. v. News Am. Inc.*, No. 2:06-cv-10240, 2011 U.S. Dist. LEXIS 66672, at *17-18 (E.D. Mich. Jan. 24, 2011) (noting that, to prove a tying arrangement under the Sixth Circuit's standard, plaintiff must show that unbundled purchases were prohibitively expensive and there were no economically practical options other than buying the bundle) (citing *Marts v. Xerox, Inc.*, 77 F.3d 1109, 1113 (8th Cir. 1996)).

Even if her definition was correct, Dr. Meyer did no analysis concerning whether the ▮▮▮ Mystic Tan® Booth unbundled price was affordable for Defendants, despite contradictory evidence from PBT that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. at 4-5.  Dr. Meyer not only ignored whether Defendants would remain profitable if they purchased Mystic Tan® Booths for ▮▮▮ but she did *absolutely no* quantitative analysis on why that price was not affordable for Defendants. *Id.*  This is not surprising given that at one point in her deposition she admitted that she did not really understand what affordable meant. *Id.*

3

Second, Dr. Meyer does nothing to verify the basis of Mr. Hall's assertion that PBT lost two prospective franchisees *because* of anticompetitive actions by Sunless, nor did she seek an explanation of contradictory evidence from the Vice President of PBT Franchising. *See* Mot. 9-10. This is not a case of simple contradictory information, but Dr. Meyer has no reliable basis, even from the source of the information, to support that conclusion. *Id.* Moreover, Dr. Meyer accepts Mr. Hall's *estimate* on what the revenues of the two prospective franchises would have been, with apparently no inquiry concerning the basis or accuracy for that information. *Id.* It strains credulity that Defendants' damages expert would quantify approximately one third of Defendants' damages (Mot. at 3) purely based on an unverified estimate, from an unseen internal document, which was verbally related to her by one of Defendants' principal executives. *See* Mot. 9-10. It is for that reason, not simply a disagreement of fact, that the basis of her opinion is unreliable.

Third, Dr. Meyer utterly failed to review pertinent information concerning whether Defendants were harmed by Sunless' refusal to sell them Mystic Tan® Booth Parts. Mot. 8-9. Here, once again, it is not a matter of a simple factual dispute but clear admissions that Dr. Meyer: (1) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (2) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; and (3) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* On top of these failures, Dr. Meyer ignored ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.*



There is a vast difference between Sunless disputing the facts on which Dr. Meyer relies, and Dr. Meyer providing inadmissible opinions with no reliable evidence on which to base her conclusions. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *see also In re Southeastern Milk Antitrust Litig.,* 739 F.3d 262, 280 (6th Cir. 2014) ("[A]n expert's opinion must use valid facts to be reliable . . . Facts can be undependable for numerous reasons, including actual information that is of poor quality, and contradictory facts present in the record."); *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (affirming exclusion of an expert opinion based on the "absence of meaningful analysis or reasoning"). Further, the Sixth Circuit has also instructed that "[r]ed flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctr., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)). Dr. Meyer raises each of these red flags with her opinions.

B.  **Dr. Meyer's Opinions Are Unreliable Not Because Her Methods Are Disputed by Sunless, But Because She Fails to Reliably Apply Her Own Methods.**

Sunless does not seek to exclude Dr. Meyer's opinions because Sunless disputes her methodology that "[t]he first step in assessing the competitive effects of potentially anticompetitive business practices is the definition of relevant antitrust markets…. As the starting point of most antitrust inquiries, market definition 'provides a conceptual framework to guide and discipline analysis.'" Meyer Report ¶ 42 (internal citation omitted). Dr. Meyer's report

5

must be excluded because, after establishing what she in her expert opinion thought was a reliable methodology, she then failed to follow it. Mot. 11-12.  Instead, Dr. Meyer attempts to conclude that Sunless' "inflated prices for VersaPro Booth Solutions" and "exorbitant price for MT Booths" have harmed Defendants' ability to compete in two markets she fails to define anywhere in her report. *Id.* This failure was undisputed by Dr. Meyer. Meyer Dep. 79:1-9.

Defendants attempt to fix what is an apparent glaring error on Dr. Meyer's part by building up her qualifications and providing post hac reasoning for why Dr. Meyer did not need to define these markets. *See* Opp. at 13-14. But Sunless does not move to exclude Dr. Meyer based on insufficient qualifications, and Defendants' post hac reasoning has no basis given: (1) the explanation was not provided in Dr. Meyer's Report; and (2) her testimony when asked about this specific issue does not support the reasoning in Defendants' Opposition. Dr. Meyer never testified that she did not need to define these markets "in order to assess the impact of Sunless' conduct," which is why Defendants provide no citation for this counsel-concocted explanation. *Compare* Opp. at 13 *with* Meyer Dep. 79:1-9.  What Defendants do not argue, because they cannot, is that Dr. Meyer's opinions should not be excluded for failure to reliably apply her own methodology. *See United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021) (citing Rule 702). ("To be admissible, any relevant scientific or technical evidence must be the 'product of reliable principles and methods' and must have been 'reliably applied' in the case.").

      **C.**      **Dr. Meyer's Opinions Are Unreliable Not Because They Are Disputed by Sunless, But Because She Fails to Do Any Analysis to Support Certain Opinions.**

Defendants' Opposition avoids directly addressing Sunless' argument that Dr. Meyer failed to do any analysis linking any anticompetitive actions by Sunless concerning Mystic Tan® Booth Parts to any harm to Defendants.  To begin, Dr. Meyer admitted that she had absolutely no

6

record evidence for the primary assumption underlying all her conclusions concerning Sunless' alleged overcharging for VersaPro® Solution: that this action was in retaliation for Defendants refusal to buy Mystic Tan® Solution. Meyer Report ¶¶ 10-11. Although she claims in her report that documents produced in the litigation support this assumption (*id.* ¶¶101-103), Dr. Meyer does not cite any such document in her report, she does not recall any such documents, nor does she dispute that her intention would have been to cite such documents if she were aware of their existence. Mot. at 6. This is further exacerbated by the fact that Dr. Meyer ignores, and yet does not dispute, directly contradictory evidence in the record. *See* Dep. Ex. 566 (CEO of Sunless stating that Sunless refuses to sell Mystic Tan® Booth Parts to Defendants due to the illegal rebranding of Mystic Tan® Booths as PBT's Sunscape booths); Meyer Dep. 136:1-136:12 (Dr. Meyer is not aware of any evidence showing that Sunless CEO's statement was pretextual).

Moreover, Dr. Meyer routinely provides opinions concerning speculative or hypothetical harm without any actual evidence or analysis to support those conclusions. Defendants are correct that Dr. Meyer "considered how the inability to buy Spray Tan Booth Parts *can* negatively affect sales of tanning sessions in Spray Tan Booths in her Report." Opp. at 14 (emphasis added). But Dr. Meyer failed to do any analysis concerning whether her articulated damage *actually did* occur. Mot. at 6-9.  Defendants also simply fail to address the fatal flaws in Dr. Meyer's analysis of Mystic Tan® Booth outages in PBT Salons, which make her opinion that it was due to any action by Sunless mere speculation. Dr. Meyer never (1) determined Defendants bought fewer Mystic Tan® Booth Parts because of the increased price; (2) determined that the price increase affected Defendants' profitability; (3) ███████████ ███████████████████████████████████████████████████████████████ █████ ; (4) ████████████████████████████████

7

██████████████████████████████████████████████

████████. *See* Opp. at 7. No matter how much these booth outages allegedly hurt Defendants' business, Dr. Meyer's opinion that Sunless caused that harm is unreliable where Dr. Meyer did no analysis whatsoever to connect Sunless' actions to the outages themselves or any other harm to Defendants.[2]

Dr. Meyer's opinion concerning the VersaPro® Solution overcharges suffers from similar issues of unreliability. Dr. Meyer does indeed spend a lot of space in her expert report "*concluding that* '[h]igher prices for VersaPro Booth Solutions are harmful to (1) Palm Beach Tan stores and (2) end consumers,' which is relevant to 'how Sunless' conduct *may* exclude or marginalize competition from any and every provider of Spray Tan Booth Solutions." Opp. at 14 (emphasis added). Dr. Meyer, however, once again fails to provide any evidence or analysis that any of her articulated harm actually occurred, or even that such occurrence is likely. Meyer Dep. 181:14-182:21 (Dr. Meyer admits she did no analysis concerning whether Sunless' increase in prices caused Defendants to increase prices on their customers); 196:11-197:13 (Dr. Meyer admits she neither found evidence Sunless' allegedly anticompetitive behavior foreclosed competition nor did any analysis concerning whether that was a possibility); Meyer Report, ¶ 16.e. ("While the resulting harm to Palm Beach Tan, its affiliated franchisees, and their customers…is not in itself direct foreclosure of competition…").

These are not "evidentiary disputes that fall squarely within the province of the jury," (Opp. at 15) but an absolute lack of evidence supporting the facts on which Dr. Meyer relies.

---

[2] Defendants' comment that "[i]n addition, Dr. Meyer cited evidence from customer reviews that demonstrate that Palm Beach Tan customers have expressed their disappointment with outages and extended downtime of MT Booths" is likewise irrelevant where there is no analysis showing those outages and Sunless' action were at all related.

8

Defendants weakly claim that "Dr. Meyer's conclusions are grounded in record evidence, including but not limited to: '(1) emails between the CEOs of Sunless and PBT; and (2) Sunless' sales data.'" (Opp. at 15). And yet, concerning both issues, Dr. Meyer's opinions directly conflict with the record evidence and she provides no alternative evidence to otherwise support her conclusions. *See supra* at 7; *see also* McCrary Report, Exhibit 8; ¶¶ 143



Meyer Dep. 180:4-11

. The facts on which Dr. Meyer's opinions rely simply lack the proper evidentiary support in the record and therefore should be excluded.

## II. DR. MEYER'S OPINIONS MUST BE EXCLUDED TO THE EXTENT THEY RELY ON UNPRODUCED INFORMATION *REGARDLESS* OF THE FORM OF THAT INFORMATION

Defendants make a desperate argument that Dr. Meyer is allowed to rely on unproduced information for her expert opinions as long as none of the information was ever reduced to notes. *See* Opp. at 8-9. To support this proposition, Defendants cite several cases from the Southern District of New York. *Id.* But this is categorically not the rule in the Sixth Circuit. The Sixth Circuit has read the requirements of Rule 26(a)(2)(B) broadly, joining the "overwhelming majority of courts" in finding that Rule 26 "requires disclosure of *all information* provided to testifying experts." *Reg'l Airport Auth. v. LFG, LLC*, 460 F.3d 697, 715-17 (6th Cir. 2006) (emphasis added). Requiring disclosure of only written information incentivizes parties to avoid producing relevant information in discovery and then allow their expert to purport to rely on that same information by providing it exclusively in oral form. In fact, it appears that Defendants

9

employ this tactic here as they went through great effort to ensure that: (1) ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (Meyer Dep. 38:17-39:5); (2) ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (*id.* 31:4-16; 34:20-35:11); (3) ▮▮▮▮▮ ▮▮▮▮ (*id.* 38:17-39:5); (4) ▮▮▮▮▮▮▮▮ ▮▮ (*id.* 32:8-33:1); and (5) ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ (*id.* 36:4-37:19).

Moreover, the cases cited by Defendants are also inapposite in addition to not applying the binding Sixth Circuit rule on disclosures. In all those cases the issue was only that the expert did not produce any notes from the interviews. *See* Opp. at 8-9. Here, Dr. Meyer relies on information that is clearly derived from documents that exist, but that were simply not produced to Sunless. For example, Eric Hall provided Dr. Meyer with the data from PBT internal records concerning revenues of two prospective franchisees, such that Dr. Meyer could perform the mathematical calculation to quantify a specific damages number related to the loss of these prospective franchisees. Report ¶ 175 n.318; Meyer Errata, Exhibit 9 n.6. These documents were not produced to Sunless. Further, Dr. Meyer refers to several facts derived from these interviews, which logic dictates must come from some record kept by Defendants and accessible to Eric Hall. *See* Mot. at 8-9; Meyer Report ¶¶ 141 n.281 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defendants' clear effort to provide this in oral form to Dr. Meyer to avoid producing such records for Sunless' scrutiny is a clear violation of Rule 26's disclosure requirement. *See Painter v. Woodstream Corp.*, 2022 WL 1308663, at *6 (N.D. Ohio Mar. 31, 2022) (J. Oliver) (A party is entitled "access to all materials reviewed or considered by the expert, whether or not the expert

10

report ultimately refers to those materials as a basis for his or her opinions."). For this reason, Dr. Meyer's opinions in reliance on this information must be excluded.

Dated: April 19, 2024                          Respectfully submitted,

*/s/ Marcella Ballard*

Stephen E. Chappelear (0012205)
sechappelear@eastmansmith.com
EASTMAN & SMITH LTD.
100 E. Broad Street, Suite 2100
Columbus, Ohio 43215
Tele: (614) 564-1440
Fax: (614) 280-1777

Marcella Ballard*
Leonard L Gordon*
Gianna Cricco-Lizza*
Maria Sinatra*
William Lawrence*
Sara Krastins*
VENABLE LLP
151 W. 42nd Street, 49th Floor
New York, NY 10036
Tele: (212) 307-5500
Fax: (212) 307-5598
*\*Admitted Pro Hac Vice*
*Attorneys for Plaintiff Sunless, Inc*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 19, 2024, the foregoing memorandum was filed via the CM/ECF electronic filing system. Notice of this filing will be sent by via email to all counsel appearing.

/s/ *Marcella Ballard*
Marcella Ballard
*Attorneys for Plaintiff Sunless, Inc.*